# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
July 9, 2003 Session

## STATE OF TENNESSEE v. JEFFERY McCRANEY

**Interlocutory Appeal from the Circuit Court for Dyer County**
**No. C02-102     Lee Moore, Judge**

---

**No. W2003-00011-CCA-R9-CD  - Filed August 22, 2003**

---

This is an appeal by permission, pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure.  The Defendant, Jeffery McCraney, was indicted by the Dyer County Grand Jury for various narcotics charges arising out of the search of his motor vehicle.  The trial court suppressed the evidence obtained as a result of that search, ruling that the search of the Defendant's vehicle was unconstitutional.  The State filed a motion for interlocutory appeal, which was granted by the trial court.  We granted the State permission to appeal, and the State asserts that the trial court erred when it granted the Defendant' s Motion to Suppress.  We hold that the trial court did not err by granting the motion because the search of the Defendant's vehicle violated constitutional protections against unreasonable searches and seizures.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOHN EVERETT WILLIAMS, J., joined.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; John H. Bledsoe, Assistant Attorney General; C. Phillip Bivens, District Attorney General; Lance E. Webb, Assistant District Attorney General, for the appellant, State of Tennessee.

Larry Fitzgerald, Memphis, Tennessee, for the appellee, Jeffery McCraney.

## OPINION
### I.  Facts

On October 15, 2001, Officer Chad Barron, who is a canine handler with the Dyer County Sheriff's Department, was observing traffic on Highway 51 when the Defendant, Jeffery McCraney, drove past him in a vehicle with license plates issued by the State of Florida.  Officer Barron testified that his attention was initially alerted to the Defendant's vehicle because the

Federal Bureau of Investigation had, on multiple occasions since September 11, 2001, issued alerts regarding suspected terrorists' vehicles, many of which were registered in Florida. Officer Barron followed the Defendant and, while so doing, learned that the Defendant's vehicle was owned by a rental car company.

Officer Barron followed the Defendant for approximately five miles, closely observing his behavior. He testified that, during this time, the Defendant "was paying a lot of attention to my presence through the use of his mirrors," "looked to see where I was . . . [when] I was not directly behind him," and "seemed like he may have been preoccupied with my presence." Officer Barron stated that his training suggested that this type of behavior was "nervous" and "suspicious." Officer Barron followed the Defendant as he turned off Highway 51, and testified that shortly after turning the Defendant applied his brakes unsafely to avoid hitting the car directly in front of him. This caused the nose of the Defendant's vehicle to "dive down." From this, Officer Barron concluded that the Defendant committed a traffic violation by following the vehicle in front of him "too closely." It was on this basis that the officer initiated a traffic stop.

Officer Barron testified that the Defendant produced his driver's license and rental agreement while the officer informed the Defendant of the reason for the stop. The Defendant told the officer that he could not afford to purchase his own vehicle so he rented vehicles. After examining the rental agreement, the officer became skeptical of this statement because the rental agreement indicated that the weekly rental charge for the vehicle was $220. Officer Barron informed the Defendant that if his license was valid the officer would only issue the Defendant a warning, and the Defendant would then be free to leave.

After verifying the Defendant's license, Officer Barron returned to the driver's side of the Defendant's car, returned the Defendant's license and gave the Defendant a verbal warning. The officer testified that he again informed the Defendant that the Defendant was free to leave. After telling the Defendant he could leave, the officer testified that he engaged the Defendant in further conversation, asking the Defendant if he had any weapons or drugs in the car. The Defendant responded negatively, and the officer asked for consent to search the vehicle. The Defendant refused to give the officer consent to search. Thereafter, the officer stated that, if the Defendant did not mind, he was going to let his canine partner sniff the outside of the vehicle. After the officer retrieved his canine from his patrol car, the Defendant again informed the officer that he did not consent to a search of the vehicle.

After about one minute, the officer's canine partner positively identified a drug scent on the passenger's side of the Defendant's vehicle. Officer Barron asked the Defendant to exit the vehicle, and the Defendant told the officer that he had a blunt cigar stuffed with marijuana inside the vehicle. Officer Barron placed the Defendant in the officer's patrol car and searched the interior of the car and the exterior of the car where the canine made a positive indication. The officer testified that, pursuant to the search, he found a marijuana cigar inside the vehicle, an aluminum foil-wrapped bag containing rock cocaine in the gasoline compartment, and, after returning to his patrol car, a bag of marijuana where the Defendant had been sitting inside of the patrol car. Officer Barron placed the Defendant under arrest.

The Defendant testified that he did have to apply his brakes rather quickly to avoid a collision, but it was because the older gentleman who was driving the car in front of him unexpectedly slowed almost to a stop. The Defendant stated that the front of his car did not "dive down" while he was breaking, but stated that he was forced to slow down almost to a stop. The Defendant also testified that after the officer checked the Defendant's license and returned from his patrol car, the officer did not tell the Defendant that he was free to leave, but instead began to question him. The Defendant stated that the questioning lasted about ten minutes and that he did not feel he was free to leave. He also testified that he specifically refused the officer's requests to search the inside of the car and refused his request to have a canine sniff the outside of the car. According to the Defendant, Officer Barron walked the dog around his car despite his refusal. Officer Barron never issued the Defendant a citation for following too closely or for any other violation.

At the conclusion of the hearing on the Defendant's Motion to Suppress, where the aforementioned testimony was presented, the trial court held that the Defendant's actions in applying his brakes to avoid a collision did not give Officer Barron probable cause or reasonable suspicion to lawfully make the traffic stop. The trial court also found that had the stop been proper, there was no probable cause for the subsequent search of the Defendant's vehicle, making the search invalid. Accordingly, the trial court granted the Defendant's Motion to Suppress the evidence seized as a result of the unlawful search. It is from this order of the trial court that the State requested, and we granted, interlocutory appeal.

## II. ANALYSIS
### A.  Legality of the Initial Traffic Stop

The State contends that the trial court erred when it granted the Defendant's Motion to Suppress holding that Officer Barron did not have reasonable suspicion or probable cause to conduct the initial traffic stop. The standard of review applicable to suppression issues is well established. When the trial court makes findings of fact at the conclusion of a suppression hearing, the facts are accorded the weight of a jury verdict. State v. Stephenson, 878 S.W.2d 530, 544 (Tenn. 1994). The trial court's findings of fact are "presumptively correct on appeal" and are binding upon this Court unless the evidence in the record preponderates against them. State v. Henning, 975 S.W.2d 290, 299 (Tenn. 1998); State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996); Stephenson, 878 S.W.2d at 544; State v. Curtis, 964 S.W.2d 604, 608 (Tenn. Crim. App. 1997). Questions regarding the credibility of witnesses, the weight and value of the evidence, and resolution of the conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. Henning, 975 S.W.2d at 299. "The party prevailing in the trial court is entitled to the strongest view of the evidence, as well as all reasonable and legitimate inferences that may be drawn from the evidence." Id. This Court conducts a de novo review of the trial court's application of the law to the facts. See State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures, and "Article I, Section 7 of the Tennessee Constitution is identical in intent and purpose with the Fourth Amendment." State v. Downey, 945 S.W.2d 102, 106 (Tenn. 1997). Stopping an automobile and detaining its occupant constitutes a "seizure" within the

meaning of the Fourth and Fourteenth Amendments to the United States Constitution. Delaware v. Prouse, 440 U.S. 648, 653 (1979); Hughes v. State, 588 S.W.2d 296, 302 (Tenn. 1979). The Fourth Amendment and Article I, Section 7 of the Tennessee Constitution require police officers to have at least a reasonable suspicion, supported by specific and articulable facts, to believe that a crime has been or is about to be committed before seizing a citizen. State v. Gonzales, 52 S.W.3d 90, 95 (Tenn. Crim. App. 2000); see State v. Daniel, 12 S.W.3d 420, 424 (Tenn. 2000). A warrantless seizure is generally presumed to be unreasonable, and thus unconstitutional, unless it was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement. See Jones v. United States, 357 U.S. 493, 499 (1958); State v. Crutcher, 989 S.W.2d 602, 605 (Tenn. 1999); State v. Simpson, 968 S.W.2d 776, 780 (Tenn. 1998).

The issue before us is whether the evidence preponderates against the trial court's determination that the Defendant's actions did not constitute a traffic offense and, therefore, did not give the officer probable cause to initiate a traffic stop. The relevant statute, which makes it an offense to follow a vehicle too closely, states "the driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway." Tenn. Code Ann. § 55-8-124 (a) (1998). After careful consideration of the record we find that the evidence does not preponderate against the trial court's suppression of the evidence. See Henning, 975 S.W.2d at 299.

The only testimony regarding the relevant events was presented by Officer Barron and the Defendant. The officer testified that he witnessed the Defendant's car "dive down" as a result of unsafe breaking, which was caused by the Defendant's following the vehicle in front of him too closely. Conversely, the Defendant testified that his car did not "dive down" and that the reason for the rapid breaking was that the vehicle in front of him unexpectedly slowed almost to a stop. The Defendant also presented evidence that the traffic stop may have been pretextual. Officer Barron admitted that he was initially alerted to the Defendant's vehicle because of its Florida license plates. The officer also testified that while he followed the Defendant he recognized the Defendant's actions as "nervous" and "suspicious," but did not witness any traffic violations besides the alleged violation of Tennessee Code Annotated section 55-8-124(a).

Based on this testimony, it was within the trial court's discretion to accredit the Defendant's testimony and to conclude that the officer had no reasonable suspicion to believe that the Defendant had violated Tennessee Code Annotated section 55-8-124(a). As a result of this finding, the trial court correctly ruled that the resulting traffic stop was invalid. Because evidence derived from an invalid traffic stop is subject to suppression, see State v. Norwood, 938 S.W.2d 23, 26 (Tenn. Crim. App. 1996), we hold that the trial court did not erroneously grant the Defendant's Motion to Suppress the evidence derived from the subsequent search of the Defendant's vehicle.

### B. Probable Cause to Search the Defendant's Vehicle

The State contends that probable cause existed for Officer Barron to conduct a canine sweep of the Defendant's car after the initial traffic stop. However, this Court has ruled that the

trial court did not err in holding that the initial stop of the Defendant was invalid as a matter of law.  Because the State's evidence originated solely from the investigation of the Defendant's vehicle after the stop, and because the record is void of any evidence against the Defendant not obtained as a result of the initial traffic stop, the trial court properly suppressed the evidence and dismissed the case.  See State v. Ronald R. Fontenot, No. CCA01C01-9808-CC-003, 1999 WL 460070, at *2 (Tenn. Crim. App. July 8, 1999).

### III. CONCLUSION

We conclude that the trial court did not err in holding that reasonable suspicion did not exist to initiate a stop of the Defendant.  As a result, it was not error for the trial court to grant the Defendant's Motion to Suppress the evidence resulting from a search of the Defendant's vehicle subsequent to the traffic stop.  Accordingly, the judgment of the trial court is AFFIRMED.

_____
ROBERT W. WEDEMEYER, JUDGE