# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs November 23, 2010

## STATE OF TENNESSEE v. CARLIE D. SCHOENTHAL

**Appeal from the Criminal Court for Hamilton County**
**No. 268237      Barry A. Steelman, Judge**

---

**No. E2010-01312-CCA-R3-CD - Filed April 27, 2011**

---

The Defendant, Carlie D. Schoenthal, pled guilty to one count of driving under the influence (DUI), first offense, reserving a certified question of law for appellate review pursuant to Tennessee Rule of Criminal Procedure 37(b)(2). The Defendant contends that the trial court erred in denying her motion to suppress the evidence resulting from the traffic stop. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which DAVID H. WELLES and NORMA MCGEE OGLE, JJ., joined.

Johnny D. Houston, Jr. and Meredith M. Ziebold, Chattanooga, Tennessee, for the appellant, Carlie D. Schoenthal.

Robert E. Cooper, Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; William H. Cox, III, District Attorney General; and C. Matthew Rogers, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Defendant was indicted for failure to keep her motor vehicle within a single lane of traffic, failure to give a turn signal, and DUI, first offense. See Tenn. Code Ann. §§ 55-8-123, -143, 55-10-401. The Defendant subsequently filed a motion to suppress, challenging the constitutionality of the traffic stop. On January 25, 2010, the trial court conducted a hearing on the motion. At the hearing, Officer David Allen of the Chattanooga Police Department testified that in the early morning hours of November 11, 2007, he observed the Defendant driving northbound on Chestnut Street near a local bar. Officer Allen began to

follow the Defendant's vehicle after he saw it "straddling the double yellow center line." Officer Allen testified that the Defendant's car was "partially into the left-hand lane" and that "for a brief time she was driving down the center of the roadway, and then she moved over into the right-hand lane." The Defendant then stopped at a stop sign and turned left onto 11th Street without using her left turn signal. Shortly after that, the Defendant stopped at a second stop sign and turned right onto Carter Street without signaling the turn. Officer Allen then pulled the Defendant over and performed several field sobriety tests on her. Officer Allen testified that while he was following the Defendant, there was no other traffic present. Officer Allen also testified that his driving was not affected by the Defendant's failure to signal her turns.

At the hearing, the video from Officer Allen's dashboard camera was placed into evidence. The video shows the Defendant's car traveling in the left lane with her right wheels touching the center double yellow line. The Defendant's car traveled in the left lane for a very brief period of time before it drifted back into the right lane. The Defendant stopped at an intersection, continued straight on Chestnut Street, and stopped at a stop sign. Without signaling, the Defendant turned left onto 11th Street and continued on until the lane divided into two turn lanes. One lane was marked for left turns and the other lane was marked for right turns. The Defendant entered the lane marked for right turns, stopped at the stop sign, and turned right. At this point Officer Allen activated his blue lights and pulled the Defendant over.

After Officer Allen's testimony and viewing the video of the incident, the trial court denied the Defendant's motion to suppress. The trial court found Officer Allen to be a credible witness and that given the totality of the circumstances, Officer Allen had a reasonable suspicion to stop the Defendant. The trial court specifically concluded that "there was a reasonable suspicion based on the fact that the car was straddling the double yellow line." However, the trial court declined to rule that the failure to give a turn signal provided a justification for the stop. Following this ruling, the Defendant filed a petition to enter into a conditional plea agreement on May 20, 2010. The Defendant agreed to plead guilty to one count of DUI, first offense, and certified the following question of law for appellate review: "Whether the traffic stop and seizure of the Defendant, that led to her arrest, was based upon reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or was about to be committed?" The trial court accepted the plea agreement and sentenced the Defendant to 11 months and 29 days with 48 hours to be served in confinement and the remainder to be served on probation. The trial court also ordered the Defendant to pay a $465 fine, attend DUI school, perform three days of community service, and revoked her driving privileges for one year.

## ANALYSIS

A trial court's findings of fact on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. Binette, 33 S.W.3d at 217. Questions about the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Both proof presented at the suppression hearing and proof presented at trial may be considered by an appellate court in deciding the propriety of the trial court's ruling on a motion to suppress. State v. Henning, 975 S.W.2d 290, 299 (Tenn. 1998); State v. Perry, 13 S.W.3d 724, 737 (Tenn. Crim. App. 1999). However, the prevailing party "is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." Odom, 928 S.W.2d at 23. Furthermore, an appellate court's review of the trial court's application of law to the facts is conducted under a de novo standard of review. State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001) (citations omitted).

The Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect against unreasonable searches and seizures. Any warrantless search or seizure is presumed to be unreasonable and requires the State to prove by a preponderance of the evidence that the search or seizure was conducted pursuant to an exception to the warrant requirement. State v. Simpson, 968 S.W.2d 776, 780 (Tenn. 1998). However, a police officer may make an investigatory stop based upon reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed. Terry v. Ohio, 329 U.S. 1, 20-21 (1968); Binette, 33 S.W.3d at 218.

A police officer must have such a reasonable suspicion in order to stop a vehicle without a warrant. State v. Randolph, 74 S.W.3d 330, 334 (Tenn. 2002). Our supreme court has stated that "when an officer turns on [his] blue lights" a stop has occurred. State v. Pulley, 863 S.W.2d 29, 30 (Tenn. 1993). Reasonable suspicion is determined by an examination of the totality of the circumstances. Binette, 33 S.W.3d at 218. Circumstances relevant to an analysis of reasonable suspicion include "the officer's objective observations [and any] [r]ational inferences and deductions that a trained officer may draw from the facts and circumstances known to him." State v. Yeargan, 958 S.W.2d 626, 632 (Tenn. 1997).

Tennessee Code Annotated section 55-8-143(a) provides that:

Every driver who intends to start, stop or turn, or partly turn from a direct line, shall first see that movement can be made in safety, and whenever the operation of any other vehicle may be affected by such movement, shall give

a signal required in this section, plainly visible to the driver of the other vehicle of the intention to make such movement.

(emphasis added). As this court has previously held, "a turn signal is only required by law when another vehicle may be affected by the turn." State v. Gonzalez, 52 S.W.3d 90, 99 (Tenn. Crim. App. 2000). Other than Officer Allen, "there was no traffic directly behind or around [the Defendant's] vehicle." Id. Officer Allen testified that his driving was not affected by either of the Defendant's turns as he was following her. Therefore, "[b]ecause no other vehicles could have been affected by [the Defendant's] movement, [the Defendant] did not violate any provision of the traffic code by failing to give a signal." Id. Accordingly, we conclude that the Defendant's failure to give a signal did not provide Officer Allen with a reasonable suspicion to stop the Defendant.

Tennessee Code Annotated section 55-8-123(1) provides that:

Whenever any roadway has been divided into two (2) or more clearly marked lanes for traffic . . . [a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from that lane until the driver has first ascertained that the movement can be made with safety.

The Tennessee Supreme Court has held that "occasionally drift[ing] from the center of the lane" does not create a reasonable suspicion to justify a traffic stop. Binette, 33 S.W.3d at 219. To hold otherwise would create

a "stop at will" standard for police since it is the rare motorist indeed who can travel for several miles without occasionally varying speed unnecessarily, moving laterally from time to time in the motorist[']s own lane, nearing the center line or shoulder[,] or exhibiting some small imperfection in his or her driving.

Id. at 219-20 (alterations in original). Additionally, this court has stated that "we do not think that a momentary drift out of a lane constitutes driving a vehicle outside of a single lane." State v. Ann Elizabeth Martin, No. E1999-01361-CCA-R3-CD, 2000 WL 1273889, at *6 (Tenn. Crim. App. Sept. 8, 2000).

However, the video reflects that the Defendant did more than momentarily and slightly weave out of her lane. Instead, the video reflects that the Defendant crossed the double yellow line and, for a brief period of time, was traveling on the wrong side of the road before drifting back into her lane. The Defendant's crossing of the double yellow lines and briefly driving on the wrong side of the road amounted to more than simply poor driving

technique. <u>See</u> <u>State v. Harold Russell Gregory</u>, No. M2002-01461-CCA-R3-CD, 2003 WL 21766250, at * 7 (Tenn. Crim. App. July 29, 2003), <u>perm. app. denied</u> (Tenn. Dec. 15, 2003) (concluding that "once the defendant crossed the double yellow line" the officer "had the right to stop him") (citing Tenn. Code Ann. §§ 55-8-121, 54-16-108). Accordingly, we conclude that Officer Allen had a reasonable suspicion to stop the Defendant and that the trial court did not err in denying the Defendant's suppression motion.

<u>CONCLUSION</u>

Upon consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE