# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### October 29, 2014 Session

## STATE OF TENNESSEE v. KENNETH MCCORMICK

**Appeal from the Criminal Court for White County**
**No. CR5719     David A. Patterson, Judge**

_____

### No. M2013-02189-CCA-R3-CD - Filed April 2, 2015

_____

The defendant, Kenneth McCormick, was indicted for driving under the influence of an intoxicant (first offense), a Class A misdemeanor. The defendant moved to suppress the evidence against him on the basis that law enforcement lacked reasonable suspicion to effect the seizure of his parked vehicle through the activation of emergency lights. The trial court denied the motion to suppress, and the defendant was convicted after a jury trial. Because we conclude that the activation of the emergency lights was an exercise of the community caretaking function and did not constitute a seizure, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which ROGER A. PAGE, and ROBERT H. MONTGOMERY, JR., JJ., joined.

William A. Cameron, Cookeville, Tennessee, for the appellant, Kenneth McCormick.

Robert E. Cooper, Jr., Attorney General and Reporter; Michelle L. Consiglio-Young, Assistant Attorney General; Bryant C. Dunaway, District Attorney General; and Phillip Hatch, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL AND PROCEDURAL HISTORY**

The defendant was afforded two hearings on the subject of his motion to suppress: one pre-trial and another that took place during the trial, in a jury-out hearing. The trial court originally denied the motion on April 19, 2013, and the defendant filed a motion to reconsider during trial on May 10, 2013. The trial court also denied this motion.

Sergeant Daniel Trivette testified in both hearings. Sergeant Trivette testified that he was driving on patrol down Highway 111 at 2:45 a.m. on April 8, 2012, when he saw a tan SUV near a grocery store. From his vantage point, the car "appeared to be sitting in the roadway," and Sergeant Trivette decided to conduct a welfare check. As he approached the car, Sergeant Trivette observed that the car's back, left wheel was partially in the roadway and that the remainder of the car was "at an angle" in a short drive that leads to a public parking lot, blocking about three quarters of the entrance to the parking area. Sergeant Trivette stopped in the roadway behind the vehicle because he felt that there was nowhere else he could park. He turned on his "back blue lights" "for [his] safety." At the hearing conducted during trial, Sergeant Trivette elaborated that "the majority of [the lights] are actually amber lights, only the exterior lights are blue." Sergeant Trivette testified that there was some other traffic on the road at the time. He approached the parked car, which had the headlights on and was running, and he saw the defendant slumped over the wheel. Loud music was blaring, there was food in the defendant's lap, and the defendant had "some sort of sauce all over his face." After tapping on the window, Sergeant Trivette opened the door and "tried to get [the defendant] to wake up." He testified that it took him a minute to get the defendant to respond to him at all. At this point, he detected a strong scent of alcohol on the defendant's breath and person and noticed an open beer bottle in the center console.

At the first hearing, the trial court found that the stop was supported by reasonable suspicion. During the hearing on the motion to reconsider, the parties also argued regarding whether Sergeant Trivette's actions fell under the community caretaking function. The trial court found that "[i]f there's not reasonable suspicion based upon articulable facts, [Sergeant] Trivette has shown today that there's good reason for a caretaking function." The trial court noted that Sergeant Trivette's testimony at the first hearing was consistent with the claim that he was acting as a community caretaker, since he had testified that he was conducting a welfare check and turned on his lights only for his own safety.

At trial, the State also introduced the testimony of Officer Scott O'Dell, who stated that he responded to a call from Sergeant Trivette to assist in a welfare check. Officer O'Dell generally testified consistently with Sergeant Trivette's testimony. He added that the shopping center was not open. Sergeant Trivette testified that, after smelling alcohol and seeing the open container of beer, he asked the defendant to step out, and the defendant was

unsteady on his feet. The defendant admitted consuming three to four beers. When Sergeant Trivette asked him if he thought he should be driving, he responded, "Not necessarily." After failing three field sobriety tests, the defendant stated that he had consumed five or six beers, and he was arrested. Sergeant Trivette and Officer O'Dell testified in detail about the defendant's performance on the field sobriety tests, and a video recording of the events was admitted into evidence both at the hearing on the motion to suppress and at trial.

Sergeant Trivette also testified that during an inventory search of the vehicle after the defendant's arrest, he found four unopened, cold beers in the back seat and a bottle of prescription xanax in the defendant's name. The defendant was read the implied consent law and refused a blood test. The defendant was placed under arrest but not *Mirandized*. While the defendant was in the back seat of the police car, another vehicle attempted to pull into the parking lot accessible through the short drive the defendant was partially obstructing. Sergeant Trivette asked the defendant if he knew the person in that car, and the defendant responded, "No, I sure don't. I'm sorry. I've had too much to drink."[1] Sergeant Trivette testified that he asked the defendant if he had taken his prescription xanax but did not testify to any response made by the defendant, and this conversation is not discernible on the video.

The defendant presented the testimony of Lance Wyatt. Mr. Wyatt testified that the defendant had spent the evening preceding the arrest with Mr. Wyatt at a golf club and that the defendant, who was the designated driver, was not impaired. Mr. Wyatt testified that the defendant picked him up at 7:00 or 8:00 p.m., that the defendant had one or possibly two drinks at the golf club lounge, and that the defendant was not intoxicated when he drove Mr. Wyatt home at a little after midnight. Mr. Wyatt acknowledged that he himself had been drinking to the point that his judgment was impaired and that he did not know where the defendant went after dropping him off at 12:15 or 12:30 a.m. He stated that there was no beer in the console of the defendant's car at the time the defendant dropped him off.

The jury convicted the defendant of a violation of Tennessee Code Annotated section 55-10-401 (2010), and he was sentenced to serve ten days of an 11 month, 29 day sentence, with the remainder to be served on probation. The defendant appeals, asserting error in the denial of the motion to suppress as his sole issue.

---

[1]The defendant objected to the admission of this statement at trial, but this issue is not raised on appeal.

**ANALYSIS**

**I. Standard of Review**

A trial court's factual findings in a suppression hearing are binding on the appellate court unless the evidence preponderates against them. *State v. Day*, 263 S.W.3d 891, 900 (Tenn. 2008). "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). The prevailing party is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences to be drawn from the evidence. *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000). An appellate court may consider the entire record, including the evidence adduced at trial, in reviewing a trial court's ruling on a motion to suppress. *State v. Williamson*, 368 S.W.3d 468, 473 (Tenn. 2012). The trial court's application of law to the facts is reviewed de novo with no presumption of correctness. *State v. Talley*, 307 S.W.3d 723, 729 (Tenn. 2010). Whether an officer was functioning in the community caretaking role is a mixed question of law and fact and is reviewed de novo. *See State v. Meeks*, 262 S.W.3d 710, 722 (Tenn. 2008) (stating that the standard of review for mixed questions of law and fact is de novo without any presumption of correctness).

**II. Community Caretaking**

The defendant asserts that a seizure took place when Sergeant Trivette activated his rear lights and that Sergeant Trivette lacked reasonable suspicion to initiate a stop. He relies on *State v. Williams*, 185 S.W.3d 311 (Tenn. 2006) and *State v. Moats*, 403 S.W.3d 170 (Tenn. 2013) for the proposition that the activation of Sergeant Trivette's lights shows that Sergeant Trivette was not acting in a community caretaking role but was effecting a seizure. However, *Moats* explicitly rejects the proposition that the use of emergency lights always negates the community caretaking function, and we conclude that Sergeant Trivette was acting within his role as a community caretaker and did not effect a seizure with the activation of his emergency lights. *See Moats*, 403 S.W.3d at 184.

The Fourth Amendment to the United States Constitution protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Article I, section 7 of the Tennessee Constitution also protects the people "from unreasonable searches and seizures;" this provision has been interpreted as imposing stronger protections than the federal Constitution. *Moats*, 403 S.W.3d at 182. Generally, a warrantless search or seizure is presumed unreasonable, and any evidence discovered by means of such a search is subject to suppression. *State v. Cox*, 171 S.W.3d 174, 179 (Tenn. 2005).

The defendant contends that Sergeant Trivette effected an unjustified seizure when he activated his lights. When a seizure amounts to a full-scale arrest, it must be supported by probable cause. *State v. Hawkins*, 969 S.W.2d 936, 938 (Tenn. Crim. App. 1997). When a seizure falls short of a full-scale arrest but consists of a brief investigatory detention, it must be supported by specific and articulable facts amounting to reasonable suspicion to believe that a criminal offense has been or is about to be committed. *Id.* The Tennessee Supreme Court has recently explored the contours of a third category of police-citizen interactions: a brief, consensual police-citizen encounter that requires no objective justification and does not rise to the level of a seizure.[2] *Moats*, 403 S.W.3d at 177-78.

In *Moats*, the Tennessee Supreme Court held that community caretaking involves no coercion or detention, is "totally divorced" from criminal investigation, and therefore falls under the umbrella of consensual police-citizen encounters. *Moats*, 403 S.W.3d at 181 (quoting *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973)). The Court elaborated that these consensual encounters require no reasonable or objective grounds for initiating an interaction, as they involve no detention and are entirely consensual. *Id.* One type of community caretaking is the "public safety function," which includes approaching parked cars when the driver appears incapacitated or the vehicle appears to be malfunctioning. *Id.* at 187.

An interaction moves from a consensual encounter to a seizure "'when an officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'" *Williams*, 185 S.W.3d at 316 (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)). In Tennessee, a seizure occurs when "'in view of all of the circumstances surrounding the incident, a reasonable person would have believed he or she was not free to leave.'" *State v. Randolph*, 74 S.W.3d 330, 336 (Tenn. 2002) (quoting *State v. Daniel*, 12 S.W.3d 420, 425 (Tenn. 2000)). In analyzing whether a seizure has occurred, a court may look to "the time, place and purpose of the encounter; the words used by the officer; the officer's tone of voice and general demeanor; the officer's statements to others who were present during the encounter; the threatening presence of several officers; the display of a weapon by an officer; and the physical touching of the person of the citizen." *State v. Gonzalez*, 52 S.W.3d 90, 96 (Tenn. Crim. App. 2000).

The defendant cites to *State v. Williams* as support for his contention that the

---

[2]The two dissenting Justices in *Moats* took issue with the majority's decision to categorize the community caretaking function as part of this third category of consensual encounters and instead advocated categorizing it as simply an exception to the warrant requirement. *Moats*, 403 S.W.3d at 193. The majority rejected this approach, relying on the broader protections against search and seizure afforded by the Tennessee Constitution. *Id.* at 187 n.8.

activation of the officer's lights constituted a seizure. In *Williams*, the officer approached the defendant's vehicle because it was stopped, with the engine running, in a deserted two-lane road; however, the officer testified that the vehicle was not obstructing traffic. *Williams*, 185 S.W.3d at 313. The officer activated his lights to alert the occupants to his presence. *Id.* The Tennessee Supreme Court acknowledged that emergency lights may be activated as a safety precaution by officers acting in the community caretaking function and that not every activation of emergency lights constitutes a seizure. *Id.* at 318. Nevertheless, the court went on to hold that, because there were no other vehicles on the road and because there was no indication that the driver was in need of assistance, the lights were directed at the defendant and constituted a seizure. *Id; cf. Gonzalez*, 52 S.W.3d at 97-98 (holding that activation of emergency lights and officer's order to return to the car constituted a seizure and concluding that "police officers who wish to question individuals may be faced with the unsettling choice of whether to activate their emergency equipment for their safety and run the risk of later suppression of any evidence obtained as a result of their questioning or whether to forego [sic] questioning the individuals altogether.").

More recently, in *Moats*, the Tennessee Supreme Court cast doubt on the result in *Williams*, noting, "today we question our application of the law to the facts in *Williams*, [but] we reaffirm the legal principles stated therein." *Moats*, 403 S.W.3d at 184. The court in *Moats* observed that past decisions had been "largely interpreted to mean that the activation of blue lights constitutes a seizure and, as a practical matter, negates the community caretaking function." *Id.* at 184. Accordingly, the *Moats* court cited with approval the following two cases demonstrating circumstances under which the activation of the officer's lights did not constitute a seizure but served law enforcement's community caretaking function. *Id.* at 185.

In *State v. Jensen*, an EMT had alerted the police to a suspected impaired driver. *State v. James Dewey Jensen, Jr.*, No. E2002-00712-CCA-R3-CD, 2002 WL 31528549, at *1 (Tenn. Crim. App. Nov. 15, 2002). When the officer arrived, the EMT's ambulance, with its emergency lights activated, and the police car, with no light activated, stopped on opposite sides of an intersection. *Id.* The EMT then alerted the officer that the defendant's vehicle, which was approaching the intersection, was the one he had witnessed driving erratically. *Id.* The defendant's car stalled as it reached the intersection, and the defendant was not able to start it. *Id.* The officer activated his lights, approached the defendant, and asked if the defendant was having a problem with his vehicle. *Id.* This court concluded that these actions were proper under the community caretaking doctrine and that the activation of lights was not a show of force but a matter of public safety. *Id.* at *4. The court noted, however, that when the defendant was asked to step out of the vehicle, the encounter became a seizure. *Id.* at *4, *6 (concluding alternatively that the stop was supported by reasonable suspicion).

In *State v. Vandergriff*, a police officer nearly collided with the defendant's vehicle, which was parked on a two-lane highway. *State v. Robert Lee Vandergriff, Jr.*, No. E2010-02560-CCA-R3CD, 2012 WL 2445049, at *1 (Tenn. Crim. App. June 28, 2012). Suspecting that the defendant was having car trouble, the officer activated his blue lights to alert the moderate traffic on the road of the obstruction in the roadway. *Id.* The officer and the defendant exited their vehicles at the same time. *Id.* At this point, the officer observed that the defendant was unsteady on his feet and exhibited confusion about his circumstances, and the officer administered field sobriety tests. *Id.* This court held that the activation of lights was a proper exercise of the community caretaking function aimed at preserving the safety of the officer and other motorists. *Id.* at *4.

*Moats*, however, provides an example of an activation of lights that does not fall under community caretaking doctrine.[3] The defendant in *Moats* was parked in an empty parking lot with his headlights on and his car turned off at 2:00 a.m. *Moats*, 403 S.W.3d at 175. After passing the vehicle once on patrol, an officer noticed that it had not moved and decided to approach the vehicle. *Id.* The officer parked the patrol car immediately behind the defendant's vehicle in the deserted parking lot and activated her blue lights. *Id.* The majority concluded that the officer was not acting in her community caretaking role when she activated her lights based on the fact that the lights were not necessary to protect either the defendant or passing motorists and could only be interpreted as a show of force to the defendant, such that a reasonable person in his circumstances would not have felt free to leave. *Id.* at 186.

We conclude that the case at bar falls comfortably under the umbrella of community caretaking. At 2:45 a.m., Sergeant Trivette noticed a car that was partially blocking a drive leading to the public parking lot of two closed businesses. The vehicle's rear tire extended into the roadway, and the vehicle was running, with its headlights illuminated. There was some amount of traffic on the road. Sergeant Trivette pulled behind the car and activated only his rear lights. *See People v. Dittmar*, 954 N.E.2d 263, 271 (Ill. App. Ct.

---

[3]In *State v. Schlueter*, not cited in *Moats*, the defendant had pulled into the parking lot of a closed store at an odd angle, not in a parking space, and he remained in the running vehicle. *State v. Paul Schlueter*, No. E2006-02365-CCA-R3-CD, 2008 WL 2166010, at *1 (Tenn. Crim. App. May 23, 2008). A concerned citizen alerted police that the occupant of a stopped vehicle was slumped over and appeared to be asleep, drunk, or dead, and on arrival, the officer witnessed the vehicle move forward very slowly and then stop. *Id.* at *1-2. The officer pulled in behind the vehicle and activated his lights. *Id.* at *1. When he walked up to the vehicle, he saw the defendant slumped over the wheel, and the car lunged forward when he first tapped on the window. *Id.* This court concluded the activation of lights was for the safety of the officer and all persons involved and fell under the community caretaking doctrine. *Id.* at *4.

2011) (holding that the use of emergency lights was warranted because of dim ambient light and passing traffic and rejecting the defendant's argument that the use of amber colored lights would have been more consistent with community caretaking). He testified that he did this because he did not think he could pull into the parking lot, the drive of which was partially obstructed by the defendant's vehicle, and he wanted to alert passing motorists to his stopped patrol car, which was blocking the roadway. Sergeant Trivette saw the defendant slumped over the wheel and heard his blaring music. Knocking on the window elicited no response, and it took him "a minute" to get a response from the defendant. All of these actions were proper under the community caretaking doctrine, which does not require reasonable suspicion. When Sergeant Trivette then noticed an open container of beer in the car and the scent of alcohol on the defendant, he had reasonable suspicion to request the defendant to exit the vehicle and perform field sobriety tests. The defendant failed the tests and acknowledged drinking alcohol prior to driving. We conclude that Sergeant Trivette was exercising his role as a community caretaker when he activated his emergency lights and that the trial court properly denied the defendant's motion to suppress.

## CONCLUSION

Based on the foregoing analysis, we conclude that there is no error, and we affirm the judgment of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE