# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs July 26, 2005

## STATE OF TENNESSEE v. PAUL DOTTERWEICH

### Direct Appeal from the Criminal Court for Washington County
### No. 29998    Lynn W. Brown, Judge

---

### No. E2004-02839-CCA-R3-CD - Filed August 10, 2005

---

This is a direct appeal as of right upon a certified question of law.  <u>See</u> Tenn. R. Crim. P. 37(b)(2). The Defendant, Paul Dotterweich, was convicted of DUI and underage consumption, both Class A misdemeanors, following his entry of guilty pleas.  The Defendant received concurrent sentences of eleven months, twenty-nine days and loss of driving privileges for one year.  On appeal, the Defendant argues that the trial court erred by failing to suppress the evidence upon which his convictions were based because the evidence was obtained during an unlawful investigatory stop. We affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed

DAVID H. WELLES, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and J.C. MCLIN, J., joined.

Scott Pratt, Johnson City, Tennessee, for the appellant, Paul Dotterweich.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Joe Crumley, District Attorney General; and Stan Widner, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

The facts in this case are not in dispute.  On December 10, 2003, Police Officer David Holtsclaw and Officer McClintock[1] of the Johnson City Police Department were dispatched to a local apartment complex to respond to a report of a fight.   The identity of the person who first

---

[1]Officer McClintock's first name is not included in the appellate record.  He is identified as a trainee of Officer David Holtsclaw.

informed the police of the fight and initiated the dispatch is apparently unknown. As the officers drove into the apartment complex parking lot, they were met by a private security guard who informed them that the fight was taking place "between two sets of buildings," and pointed the way. The officers proceeded on foot to the area where they were instructed to go. On the way they were met by two individuals, one of whom was the Defendant. Officer McClintock asked the two if they had been involved in a fight, and they responded in the negative. The officers continued on to the area where they were informed the fight was, and upon arriving they met a third individual who informed them that the two men they had just passed were involved in the fight. The officers immediately turned around and retraced their path. When they arrived back at the parking lot, they observed a vehicle leaving the lot. Officer McClintock ran after and stopped the vehicle. The Defendant, who was driving, was asked to step out of the vehicle at which time Officer Holtsclaw "immediately noticed a smell of alcohol."

At the suppression motion hearing, Officer Holtsclaw admitted that when he first saw the Defendant and his companion walking toward the parking lot he did not notice any injuries about them or other physical evidence suggesting a fight. He also said that when he returned to the parking lot and saw the car about to leave, he did not know who was in the car.

**PROCEDURAL HISTORY**

In July of 2004, a Washington County grand jury indicted the Defendant on one count of DUI, see Tenn. Code Ann. § 55-10-401, and one count of underage consumption, see Tenn. Code Ann. § 1-3-113. A few weeks after the indictment, the Defendant filed a motion to suppress the evidence obtained during the investigatory stop, arguing that the police did not have "reasonable suspicion" to stop him and therefore violated his Fourth Amendment rights. A suppression hearing was conducted in September of 2004, at the conclusion of which the Defendant's motion to suppress was denied.

In denying the motion to suppress, the trial court made the following findings and conclusions:

> There's a call for a physical fight . . . and there's dispatch, and the reliability of that is in question because you've got an anonymous source. But, you've — you've got a security guard who tells Mr. Holtsclaw there's a physical fight that's been in between these two buildings. He walks around, and Officer Holtsclaw sees Mr. Dotterweich and another person leaving. They say they're not involved in the fight. But, then another person, whom we don't know, but, from all indications is not involved, says that those two are the ones that are fighting. And the creditability [sic] is not a question. Mr. Holtsclaw is a good witness. He's very matter of fact. He's very creditable [sic]. And he sees a car leaving. He cannot testify, you're correct, that they got into that car. But, this car is leaving from the direction that the two men have just – just walked, which was his testimony. He had his trainee stop the vehicle. And the court is of the opinion that he had a reasonable suspicion based on facts that can be articulated that those were the people involved in the fight. There may have

also been issues of disturbance of the peace from what goes on. And, so, he has a right to stop and investigate, and do a temporary detention. If Mr. Dotterwiech had been sober, if there had been no violation of the law committed in the officer's presence then he could have warned them, say stay away from here, don't be fighting, don't be making noise. If one of them wanted to press charges he could have said this is how you do that because he could not have arrested unless it, on investigation, appeared to be a domestic situation, which there is no indication of that. But, he had the right to investigate it. The court concludes that there was a reasonable suspicion based upon facts that can be articulated that a crime had occurred and needed to be investigated.

In November of 2004, the Defendant entered a guilty plea to the offenses as charged, but reserved as a certified question of law the following issue: "Did the trial court err in denying the Defendant's Motion to Suppress on the grounds that the police did not have a reasonable suspicion, supported by articulable facts, that the defendant was involved in criminal activity when they stopped his vehicle on 12-10-2003?" The Defendant timely filed a notice of appeal.

## ANALYSIS

The Defendant argues that the police lacked reasonable suspicion supported by specific and articulable facts to effectuate the initial investigatory stop which led to his arrest. He further asserts that any evidence obtained as a result of this unlawful seizure should be suppressed and the trial court erred when it failed to do so. In support of this claim, the Defendant argues that the police officers acted on information provided by several unknown informants whose credibility was uncertain and whose basis for knowledge was unverified. The Defendant further argues that the officers failed to obtain any information to corroborate the informants' tips, and therefore, under these circumstances, the police had no specific and articulable facts to support a reasonable suspicion that the Defendant was involved in criminal activity.

### I. Certified Question

Initially, we note that Tennessee Rule of Criminal Procedure 37(b)(2) provides that an appeal lies from any judgment of conviction entered pursuant to a plea of guilty or nolo contendere if

(i) The defendant entered into a plea agreement under Rule 11(e) but explicitly reserved with the consent of the state and of the court the right to appeal a certified question of law that is dispositive of the case, and the following requirements are met:

(A) The judgment of conviction, or other document to which such judgment refers that is filed before the notice of appeal, must contain a statement of the certified question of law reserved by defendant for appellate review;

(B) The question of law must be stated in the judgment or document so as to identify clearly the scope and limits of the legal issue reserved;

(C) The judgment or document must reflect that the certified question was expressly reserved with the consent of the state and the trial judge; and

(D) The judgment or document must reflect that the defendant, the state, and the trial judge are of the opinion that the certified question is dispositive of the case[.]

Having found the Defendant to have met these requirements, we conclude that the certified question is properly before this Court.

## II. Standard of Review

When reviewing the correctness of a trial court's grant or denial of a pretrial motion to suppress, an appellate court must uphold the trial court's findings of fact "unless the evidence preponderates otherwise." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). This standard recognizes that the credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters "entrusted to the trial judge as the trier of fact." Id. Moreover, it is settled law that the party prevailing at the trial court is entitled to the strongest legitimate view of the evidence and all reasonable inferences drawn from that evidence. See State v. Hicks, 55 S.W.3d 515, 521 (Tenn. 2001). The defendant has the burden of establishing that the evidence contained in the record preponderates against the findings of fact made by the trial court. See Braziel v. State, 529 S.W.2d 501, 506 (Tenn. Crim. App. 1975).

However, this Court is not bound by the trial court's conclusions of law. See State v. Randolph, 74 S.W.3d 330, 333 (Tenn. 2002). The application of the law to the facts as found by the trial court is a question of law which an appellate court reviews de novo. See State v. Daniel, 12 S.W.3d 420, 423 (Tenn. 2000). Because the facts presented at the suppression hearing in this case were undisputed, only questions of law are before this Court. Therefore, our review of the record before us is purely de novo. See State v. Gonzalez, 52 S.W.3d 90, 94 (Tenn. Crim. App. 2000).

## III. Constitutional Protections from Unlawful Searches and Seizures
### A. General Rule

Both the Fourth Amendment to the United States Constitution and Article 1, Section 7 of the Tennessee Constitution prohibit "unreasonable searches and seizures."[2] The intent and purpose behind these constitutionally protected rights is to "safeguard the privacy and security of individuals against arbitrary invasions of government officials." Camara v. Municipal Court, 387 U.S. 523, 528

---

[2]The Fourth Amendment to the United States Constitution provides as follows:

> Unreasonable searches and seizures. The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article 1, Section 7 of the Tennessee Constitution guarantees that:

> the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offences are not particularly described and supported by evidence, are dangerous to liberty and ought not to be granted.

-4-

(1967).[3]  As a general rule, warrantless searches or seizures are presumed unreasonable, and any evidence discovered thereby is subject to suppression unless the State demonstrates by a preponderance of the evidence that the search or seizure was conducted pursuant to a narrowly defined exception to the warrant requirement.  See Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971); State v. Garcia, 123 S.W.3d 335, 343 (Tenn. 2003).

B.  Seizure

Before the constitutional protections against an unreasonable seizure are triggered, there must be a seizure.[4]  Our courts have recognized three types of police-citizen interactions: 1) a full scale stop and arrest, which must be supported by probable cause, see Whren v. United States, 517 U.S. 806, 809-10 (1996); 2) a brief investigatory stop, which must be based on reasonable suspicion supported by specific and articulable facts, see Terry v. Ohio, 392 U.S. 1, 20-23 (1968); and 3) a brief police-citizen encounter, which requires no objective justification, see United States v. Drayton, 536 U.S. 194, 201-02 (2002).  See also Daniel, 12 S.W.3d at 424.  Of the three categories, only the first two rise to the level of a "seizure" for constitutional analysis purposes.

An encounter between a government official and a citizen is a seizure "[o]nly when the officer, by means of physical force of show of authority, has in some way restrained the liberty of a citizen."  Terry, 392 U.S. at 20 n.16.  In determining whether an encounter between a citizen and the police is a consensual encounter or a seizure, courts are instructed to look to the surrounding circumstances and "determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter."  Florida v. Bostick, 501 U.S. 429, 439 (1991); see also Gonzalez, 52 S.W.3d 52 at 96.

Both the United States Supreme Court and our state supreme court have held that a stop of an automobile and the detention of its occupants constitutes a seizure even if the purpose of the stop is limited and the detention is brief.  See Whren, 517 U.S. at 809-10; State v. Vineyard, 958 S.W.2d 730, 734 (Tenn. 1997).  In the case at hand, it is undisputed that the Defendant was seized by the Johnson City Police when the vehicle he was driving was stopped in the apartment complex parking lot and he was asked to exit.  Therefore, the primary issue before this Court is whether or not this warrantless seizure was constitutionally "unreasonable."

## IV. Investigatory Stop

In the case at hand, the Defendant was seized without a warrant.  While a warrant is normally required when a government official intrudes upon the privacy of a citizen, there are several narrowly defined exceptions to this warrant requirement.  One such recognized exception exists when the

---

[3]The intent and purpose of the prohibitions against unreasonable searches and seizures found in the Tennessee Constitution have been found to be the same as that behind the provision found in the Fourth Amendment to the United States Constitution.  See State v. Simpson, 968 S.W.2d 776, 779 (Tenn. 1998).

[4]The Defendant has not alleged an unlawful search.  On appeal, the Defendant argues only that he was subjected to an unlawful seizure when the police "stopped his vehicle," and that the evidence obtained subsequent to this seizure was tainted and should be suppressed.

police make a brief investigatory stop.  See Terry, 392 U.S. at 21; Garcia, 123 S.W.3d at 343.  In order for such a warrantless seizure to be deemed reasonable, the Unites States Supreme Court has held that the detention must have been based on "reasonable" suspicion, supported by "specific and articulable facts" that a criminal offense has been committed or is about to be committed.  Terry, 392 U.S. at 20-21.

The language of the certified question at issue in this case clearly indicates that both the Defendant and the State consider whether the interaction between the police and the Defendant constituted an "investigatory stop" adequately supported by "reasonable suspicion" to be the question of law dispositive of this case.  The Defense argues that the informants' tips were inadequate to support a reasonable suspicion that the Defendant committed a crime, and therefore the investigatory stop was an unreasonable seizure.  The State argues that the police did have reasonable suspicion under the circumstances in this case to initiate an investigatory stop based upon reliable testimony from citizen informants and other objective factors.

A.  Reasonable Suspicion Analysis

Determining whether or not reasonable suspicion existed in a particular stop "is a fact-intensive and objective analysis."  Garcia, 123 S.W.3d. at 344.  The likelihood of criminal activity required for reasonable suspicion is clearly not as great as that required for probable cause, and is "considerably less" than would be needed to satisfy a preponderance of the evidence standard.  United States v. Soklow, 490 U.S. 1, 7 (1989); see also State v. Keith, 978 S.W.2d 861, 866 (Tenn. 1998).

When evaluating whether a police officer's reasonable suspicion is supported by specific and articulable facts, a court "must consider the totality of the circumstances."  State v. Hord, 106 S.W.3d 68, 71 (Tenn. Crim. App. 2002).  This inquiry looks to such factors as the public interest served by the seizure, the nature and scope of the intrusion, and the objective facts on which the law enforcement officer relied in light of his experience.  See State v. Pulley, 863 S.W.2d 29, 30-31 (Tenn. 1993).  The objective facts on which an officer relies can include, but are not limited to, his or her own observations, information obtained from other officers or agencies, offenders' patterns of operation, and--most crucial in this case--information from informants.  See State v. Lawson, 929 S.W.2d 406, 408 (Tenn. Crim. App. 1996).

B.  Informant Information

It is well established that the facts forming the basis of an officer's reasonable suspicion need not rest upon the personal knowledge or observations of the officer.  See Keith, 978 S.W.2d at 865 (citing Adams v. Williams, 407 U.S. 143, 147 (1972)).  However, when a seizure is based on the tip of an informant, the danger of a false report is a recognized concern.  See, e.g, Gonzalez, 52 S.W.3d at 99.  Because of this potential danger, the veracity of the informant upon whose statement a seizure is initiated is subject to scrutiny.  In conducting this analysis, Tennessee courts have distinguished anonymous or confidential informants from citizen informants.

Our supreme court has held that when considering whether or not information obtained from an anonymous informant adequately supports an officer's reasonable suspicion, "some showing of both the informant's veracity or credibility and his or her basis for knowledge" is required. Keith, 978 S.W.2d at 866 (citing State v. Jacumin, 778 S.W.2d 430, 436 (Tenn. 1989)). The court, however, recognized that the Jacumin two-prong credibility and basis of knowledge test applied to probable cause determinations, and that the reasonable suspicion requirement for investigatory stops "requires a lower quantum of proof." Pulley, 863 S.W.2d at 31. Therefore, the two-prong test has been relegated to being merely "helpful," see Simpson, 968 S.W.2d at 781, or "useful," see Gonzalez, 52 S.W.3d at 99, in determining whether a tip from an anonymous informant is sufficiently reliable to support a finding of reasonable suspicion. In sum, the information provided by an anonymous informant may be "less reliable than that required to show probable cause," and therefore the "two-prong test of reliability is not as strictly applied" if the anonymous informant's tip is used to establish "reasonable suspicion" for an investigatory stop as opposed to "probable cause," the higher standard required for a full seizure and arrest. Keith, 978 S.W.2d at 866.

However, a different standard is applied to "citizen informants" whose information forms the basis of a police officer's reasonable suspicion. Information from a citizen informant is presumed reliable and is not subjected to the same level of scrutiny as that of an anonymous informant. See State v. Melson, 638 S.W.2d 342, 354 (Tenn. 1982). Thus, information obtained from a citizen informant is not subject to the two-prong reliability test. Citizen informant information is presumed reliable because the informant has necessarily gained his or her information through first-hand experience, and their motivation for communicating with the authorities stems from the "interest of society or personal safety." State v. Luke, 995 S.W.2d 630, 636 (Tenn. Crim. App. 1998).

In the case at hand, the Defendant contends that the police officer's investigatory stop was based solely on information received from "anonymous" informants, and there was "no evidence as to the informants' credibility or basis of knowledge." According to the Defendant, neither the credibility nor the basis of knowledge of the security guard and the unnamed informant who pointed out the Defendant were established. To support his argument, the Defendant cites State v. Gonzalez, 52 S.W.2d 90 (Tenn. Crim. App. 2000), in which this Court reversed a trial court's refusal to suppress evidence obtained during an investigatory stop made pursuant to a tip from a confidential informant. Additionally, the Defendant asserts that the police officers lacked specific and articulable facts to support a reasonable suspicion that criminal activity was afoot by the person in the car they stopped.

We begin by noting that Gonzalez is distinguishable from this case. In Gonzalez, the tip came from a confidential informant, which necessitated the two-prong analysis of the informant's credibility and basis of knowledge. This Court determined in Gonzalez that there was "absolutely no evidence as to the informant's basis of knowledge." Gonzalez, 52 S.W.3d at 100. Here, however, there were two citizen informants whose credibility must be presumed reliable. Both the security guard and the unnamed informant were apparently witnesses to the fight, and their statements corroborated each other as to both location and time. There is no evidence in the record

that would suggest the heightened standard of scrutiny reserved for anonymous informants should be applied to these witnesses.

The fact that the security guard and the unnamed informant are not identified by name in the record does not negate the fact that the police spoke with them both personally in connection with the crime they were investigating. See Luke, 995 S.W.2d at 637 (holding that testimony received second-hand from an unnamed security guard was credible). Rather, the standard which must be met (for a citizen informant's reliability to be presumed) is that their status or relationship to the events involved must be established. See Melson, 638 S.W.2d at 354-56. Here, both the informants' relationship to the events was established by their close proximity to the event the police were investigating.

The Defendant also argues that since the police failed to corroborate the details of the informants' testimony, the officers lacked specific facts necessary to support a reasonable suspicion. Specifically, the Defendant claims that because the police did not observe any physical evidence of a fight when they first talked to the Defendant and his companion, they should have discounted the information from the unnamed informant received moments later who claimed the Defendant had been involved in a fight. However, as already stated above, the facts forming the basis of an officer's reasonable suspicion need not rest upon the personal knowledge or observations of the officer. See Keith, 978 S.W.2d at 865. Accordingly, we find that the information provided by the two citizen informants was credible, and amounted to objective facts that would support a finding that the police had reasonable suspicion to believe the Defendant was involved in criminal activity.

C. Totality of the Circumstances

The Defendant also argues that even if the police had reasonable suspicion to believe he was involved in criminal activity, they had no specific or articulable facts to support their conclusion that the Defendant, or any criminal suspect for that matter, was in the car they stopped. As stated above, when evaluating whether a police officer's reasonable suspicion is supported by specific and articulable facts, a court "must consider the totality of the circumstances." Hord, 106 S.W.3d at 71.

The police were at the apartment complex in response to a fight call. The police have a duty to investigate public disturbance calls, and, as such, the public interest was served by the investigatory stop. The nature and scope of the intrusion was, or more accurately would have been, very slight. Just as the Defendant was questioned and released in a matter of moments by the police in their first consensual encounter, the Defendant would no doubt have also been briefly questioned and released during the investigatory stop had no evidence of criminal activity been observed.

Additionally, the objective facts upon which the police relied support a finding of reasonable suspicion. The officers were instructed by a citizen informant security guard where a fight was taking place as soon as they arrived at the apartment complex. It is presumably the job of a security guard to know about such unlawful activities and accurately report them to the proper authorities. When the officers proceeded to the place described to them by the security guard, another citizen informant corroborated the information that a fight had recently taken place at the location described

by the security guard. This informant also described who was involved and further informed the officers that the suspects were walking toward the parking lot. Acting upon this updated information, the officers returned to the parking lot and stopped the only vehicle attempting to leave the scene. Relying on their knowledge and experience as law enforcement officers, the police had ample objective facts upon which to base a reasonable suspicion that the car attempting to leave may have contained persons recently involved in criminal activity.

Based on the totality of the circumstances, we find that the officers had specific and articulable facts upon which to base a reasonable suspicion that the Defendant was involved in criminal activity. Therefore, the seizure of the Defendant pursuant to an investigatory stop of his vehicle was not unlawful within the purview of the Tennessee and United States Constitutional protections against unreasonable seizures. This issue is without merit.

## CONCLUSION

Based on the reasoning and authorities stated above, we hold that the trial court did not err in denying the Defendant's motion to suppress evidence obtained during an investigatory stop. The judgments of the trial court are affirmed.

_____
DAVID H. WELLES, JUDGE