# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs March 3, 2009

## STATE OF TENNESSEE v. ANGELO ALLEN

**Direct Appeal from the Criminal Court for Shelby County**
**No. 07-05518     James C. Beasley, Jr., Judge**

**No. W2008-00955-CCA-R3-CD   -   Filed September 23, 2009**

The defendant, Angelo Allen, was convicted of possession of cocaine and two counts of possession of marijuana, all Class A misdemeanors.  The defendant was sentenced to eleven months and twenty-nine days for each conviction. The court ordered that the marijuana convictions be merged and that the remaining two convictions run concurrently, for a total effective sentence of eleven months and twenty-nine days.  The defendant raises four issues on appeal: (1) the trial court improperly denied his motion to suppress; (2) count two of his indictment should have been dismissed; (3) venue was not established at trial; and (4) he was sentenced improperly.  After careful review, we conclude that the motion to suppress was properly denied, count two was proper, and venue was established.  However, we remand for affixing a percentage of the sentence to be served by the defendant.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed in Part and Remanded**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

Michael J. Gatlin, Memphis, Tennessee, for the appellant, Angelo Allen.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; William L. Gibbons, District Attorney General; and Byron B. Winsett, III, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

In this case, a Memphis police officer observed the defendant in possession of drugs in front of the defendant's residence.  Upon the officer's  approach, the defendant attempted to enter the residence. The officer apprehended him in the open doorway, and the defendant then threw a "baggie" into the residence. The "baggie," which contained drugs, was seized by the officer, as were other drugs found in the living room of the residence.

Hearing on the Motion to Suppress

The defendant filed a motion to suppress the evidence seized during and immediately after his arrest. Following a hearing on the motion to suppress, the trial court concluded that both the plain view and hot pursuit exceptions to the warrant requirement applied to the facts of the case. The officer observed the defendant holding a "baggie" of drugs in "plain view" as he rode past the defendant. The trial court further found that the additional evidence was admissible because the defendant fled, causing the officer to chase him into the doorway of the residence, and threw the drugs inside, giving the officer the right to perform a cursory search of the room.

At Trial

Officer John Cooper, a Memphis police officer stationed with the North Precinct bicycle patrol, testified that he was on duty on July 29, 2005, when he observed the defendant and another man on the front porch of a duplex in Memphis. The officer testified that he was twenty to twenty-five yards away from the defendant when he saw a plastic "baggie" in the defendant's hands. He said that he saw "white rocks" in the plastic bag that he believed to be crack cocaine. When the defendant saw the officer, he pulled the bag up into his hands. The officer said that he continued riding past the duplex as if he had not seen anything.

The officer called other officers to meet him. He opined that it took fifteen minutes for the other officers to arrive and formulate a plan. One officer drove past the duplex as a diversion, and the other officers approached the defendant's residence from the rear and side. The defendant and the other man on the porch watched the officer drive past the residence. Officer Cooper approached the residence on his bike while the defendant was watching the patrol car. The officer testified that, because the defendant attempted to run into the residence when he saw the police, he jumped on the porch to prevent the defendant from entering the residence. The defendant threw two clear plastic "baggies" into the house and started shouting, "shut the door, shut the door" to a woman inside the house. The officer stuck his foot in the doorway to prevent the woman inside the house from closing the door. As the officer struggled with the defendant, a second officer handcuffed the defendant.

Officer Cooper said that he entered the residence and saw the two "baggies" lying on the floor, just inside the door. The bags were determined to contain marijuana. The officer also saw "numerous rocks of crack cocaine" on a coffee table inside the house near the front door. Additionally, he saw a set of digital scales and sandwich bags normally used to package crack cocaine.

Officer Anthony Russell of the Memphis Police Department corroborated Officer Cooper's testimony. He testified that he rode past the residence as a diversion. He said it was not necessary to open the front door to see the drugs inside the residence because Officer Cooper used his foot to hold the door open.

A Tennessee Bureau of Investigation agent in the drug chemistry section testified that she tested the substances found in the "baggies" seized by the officers. She said the marijuana weighed 1.9 grams and the crack cocaine weighed 2.9 grams.

An employee of Memphis Light Gas and Water (MLGW) testified that he kept the records from MLGW's database. He said the defendant requested service at 1497 Fairfax Street on June 10, 2005, and received his first bill on June 29, 2005, and his final bill on April 11, 2006.

The defendant also testified at trial. He stated he had a dog leash or plastic dog toy in his hand when the officer rode by on his bicycle. He testified that the officer entered his yard and told him that he had a warrant against the defendant for domestic violence. The defendant said he got up from the porch and called to his girlfriend, who was in the house. The defendant said his girlfriend came to the door, and he asked her to shut the door because he did not want his children to see what was going on outside.

The defendant moved to dismiss the case at the close of proof and argued that the State failed to establish venue. Specifically, the defendant argued that no witness testified that the events occurred in "Memphis, Shelby County, Tennessee." The trial court responded that Officer Cooper had testified that he arrested the defendant at "1497 Fairfax in Memphis, Shelby County, Tennessee." The trial court further found that Officer Russell had testified that 1497 Fairfax is located in the North precinct of Memphis in Shelby County, Tennessee. The court concluded, "So, I think that has been covered."

At the conclusion of the trial, the defendant was convicted of possession of cocaine and two counts of possession of marijuana, all Class A misdemeanors.

## Sentencing Hearing

During the sentencing hearing, the State made the defendant's presentence report an exhibit. The defendant had five prior felony convictions including assault with the intent to commit murder, aggravated assault, two convictions for reckless endangerment involving a deadly weapon, and attempted voluntary manslaughter. The defendant also had thirteen prior misdemeanors which included two drug convictions.

The trial court found that the defendant had an extensive history of criminal convictions and criminal behavior dating back fifteen years. After merging the two convictions for marijuana possession, the court sentenced the defendant to eleven months and twenty-nine days for each of the remaining two convictions, with the sentences to run concurrently. The trial court specifically stated that the defendant was not a proper candidate for probation.

## Analysis

First, the defendant argues that the trial court erred in denying his motion to suppress the evidence seized following his arrest. The findings of fact made by the trial court at the hearing on a motion to suppress are binding upon this court unless the evidence contained in the record preponderates against them. *State v. Ross*, 49 S.W.3d 833, 839 (Tenn. 2001). The trial court, as the trier of fact, is able to assess the credibility of the witnesses, determine the weight and value to be

afforded the evidence, and resolve any conflicts in the evidence. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). The prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable inferences drawn from that evidence. *State v. Hicks*, 55 S.W.3d 515, 521 (Tenn. 2001). However, this court is not bound by the trial court's conclusions of law. *State v. Randolph*, 74 S.W.3d 330, 333 (Tenn. 2002). The application of the law to the facts found by the trial court are questions of law that this court reviews *de novo*. *State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000). The defendant has the burden of establishing that the evidence contained in the record preponderates against the findings of fact made by the trial court. *Braziel v. State*, 529 S.W.2d 501, 506 (Tenn. Crim. App. 1975).

The defendant contends that the arrest was completed and it was not necessary for the officers to enter the residence. Further, he argues that the officer's observation was at best sufficient to justify his arrest but not to warrant an entry into the residence. The trial court found that exceptions to the warrant requirement applied to justify the search of the residence that resulted in the discovery of the drugs.

Here, the trial court found that the hot pursuit exception was applicable because the defendant attempted to run from the officer. The officer caught the defendant in the threshold of his doorway. The question of whether circumstances were sufficient to justify a warrantless search is a mixed question of law and fact. Review of mixed questions of law and fact is *de novo* with no presumption of correctness. *State v. Meeks*, 262 S.W.3d 710, 722 (Tenn. 2008).

The Fourth Amendment of the United States Constitution states the following:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Further, Article I, Section 7 of the Tennessee Constitution provides

[t]hat the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offenses are not particularly described and supported by evidence, are dangerous to liberty and ought not to be granted.

The purpose and intent of Article I, Section 7 is identical to that of the Fourth Amendment, which is to "'safeguard the privacy and security of individuals against the arbitrary invasions of government officials.'" *State v. Randolph*, 74 S.W.3d 330, 334 (Tenn. 2002) (quoting *Camara v. Municipal Court*, 387 U.S. 523, 528, 87 S. Ct. 1727, 1730 (1967)); *State v. Gonzalez*, 52 S.W.3d 90, 95 (Tenn. Crim. App. 2000).

A warrantless search is presumed unreasonable under both the federal and state constitutions, and evidence seized from the warrantless search is subject to suppression unless the State demonstrates by a preponderance of the evidence that the search was "conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *State v. Simpson*, 968 S.W.2d 776, 780 (Tenn. 1998); *see Coolidge v. New Hampshire*, 403 U.S. 443, 454-55, 91 S. Ct. 2022, 2032 (1971). The main exceptions to the requirement for a search warrant are: (1) consent to search; (2) a search incident to a lawful arrest; (3) probable cause to search with exigent circumstances; (4) in hot pursuit; (5) a stop and frisk situation; and (6) plain view. *State v. Bartram*, 925 S.W.2d 227, 230 (Tenn. 1996).

The United States Supreme Court has recognized "that a warrantless entry by criminal law enforcement may be legal when there is compelling need for official action and no time to secure a warrant." *Michigan v. Tyler*, 436 U.S. 499, 509, 98 S. Ct. 1492 (1978). Exigent circumstances are one compelling need and are limited to three situations: (1) when officers are in hot pursuit of a fleeing suspect; (2) when the suspect represents an immediate threat to the arresting officers or the public; and (3) when immediate police action is necessary to prevent the destruction of vital evidence or thwart the escape of known criminals. *Jones v. Lewis*, 874 F.2d 1125, 1130 (6th Cir. 1989); *see also State v. Stacy N. Mooneyhan*, No. M2006-01330-CCA-R3-CD, 2007 Tenn. Crim. App. LEXIS 861, at \*\*18-19 (Tenn. Crim. App. at Nashville, Oct. 30, 2007), *perm. to appeal denied* (Tenn. Jan. 18, 2008).

The State bears the burden of demonstrating that exigent circumstances overcome the presumption of unreasonableness that attaches to all warrantless home entries. *Welsh v. Wisconsin*, 466 U.S. 740, 750, 104 S. Ct. 2091 (1984). An objective standard is used to determine the reasonableness of the officer's belief that an emergency situation existed at the moment of entry. *Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S. Ct. 1868 (1968). In determining whether the officer acted reasonably, this court must consider the totality of the circumstances, including the personal observations of the trained police officer and the rational inferences and deductions therefrom. *See State v. Watkins,* 827 S.W.2d 293, 294 (Tenn. 1992).

Here, the trial court determined that both the plain view and the hot pursuit exceptions to the warrant requirement were applicable. The trial court found that the officer observed the drugs in plain view during the initial pass by the defendant's residence. The court then concluded that the officer gave chase in hot pursuit of the defendant and reached him at the threshold of the doorway. The court determined that because the officer had a right to perform a cursory search because he pursued the defendant to the living room doorway and apprehended him just inside the residence.

The trial court cited *United States v. Santana*, 427 U.S. 38, 96 S. Ct. 2406 (1976), to support its conclusion that the search was valid. In *Santana*, the police had probable cause to believe a woman standing on her front porch had committed a crime. When she noticed law enforcement officers approaching her, she ran into the house. An officer testified that the defendant was standing directly in the doorway; one step forward would have put her outside and one step backward would

have put her in the vestibule of her residence. *Santana,* 427 U.S. at 40, 96 S. Ct. at 2408 n.1. The United States Supreme Court concluded that the officers' warrantless entry into the house was justified under the hot pursuit exception to the warrant requirement. The Court specifically noted that a hot pursuit does not need to be an extended hue and cry in and about the public streets. *Id.* at 42-43. That the pursuit ended almost as soon as it began did not render it any less a hot pursuit sufficient to justify the warrantless entry into Santana's house. *Id.* at 43.

The facts of the underlying case are similar to those in *Santana*. The officer was in hot pursuit of the defendant just as he attempted to go inside his residence. The court found that the officer reached the defendant at the threshold of the residence. The officer saw the defendant throw a "baggie" into the front room of the residence. The State argues, and we agree, that, because the officer was in hot pursuit of the defendant and apprehended him at the doorway and because the defendant threw the suspected drugs into the residence, it was permissible for the officer to retrieve the drugs that were discarded as he attempted to arrest the defendant.

With regard to the cocaine, the officer was lawfully in the defendant's residence. The plain view exception to the warrant requirement applied to the drugs discovered beside the front door and on the coffee table. This court has stated that the plain view doctrine applies when (1) the items seized were in plain view; (2) the viewer had the right to be in the position to view the items; and (3) the incriminating nature of the items was immediately apparent. *State v. Cothran*, 115 S.W.3d 513, 525 (Tenn. Crim. App. 2003). Here, the officer was lawfully in the residence because he saw the defendant throw the "baggies" into the residence. The other drugs observed by the officer were in plain view in the living room where he retrieved the "baggies" that had been thrown into the room. The trial court properly denied the motion to suppress.

Next, the defendant argues that the State failed to establish venue and contends that, during the prosecution of the case, no mention was made of the incident occurring in Memphis, Shelby County, Tennessee. However, the record reflects that two witnesses for the State testified that the incident occurred at 1497 Fairfax in Memphis, Shelby County, Tennessee.

An accused is entitled to a trial in the county where the offense was committed. *State v. Marbury*, 908 S.W.2d 405, 407 (Tenn. Crim. App. 1995); *State v. Bloodsaw*, 746 S.W.2d 722, 723 (Tenn. Crim. App. 1987). The burden is on the State to prove that the offense was committed in the county specified in the indictment. *Marbury*, 908 S.W.2d at 407; *Bloodsaw*, 746 S.W.2d at 724. Tennessee Code Annotated section 39-11-201(e) (2006) provides that the State must prove venue "by a preponderance of the evidence." This means there must be sufficient factual information to cause the fact finder to believe an allegation is probably true, i.e., it must have the greater convincing effect in the fact finder's belief. *Marbury*, 908 S.W.2d at 408.

Venue is not an element of the offense which must be proved beyond a reasonable doubt; it is a jurisdictional fact which must be proved by a preponderance of the evidence. *State v. Hutcherson*, 790 S.W.2d 532, 533, 535 (Tenn. 1990); *State v. Smith*, 926 S.W.2d 267, 269 (Tenn. Crim. App. 1995); *see* T.C.A. § 39-11-201(e). Venue may be shown by either direct or

circumstantial evidence. *Hutcherson*, 790 S.W.2d at 533; *Smith*, 926 S.W.2d at 269. A jury is entitled to draw a reasonable inference from proven facts as to the issue of venue. *State v. Reed,* 845 S.W.2d 234, 238 (Tenn. Crim. App. 1992).

During the State's proof, the officers testified on the record that the incidents occurred in Memphis, Shelby County, Tennessee. This evidence is sufficient to establish venue.

Next, the defendant argues that there was a material variance between the indictment and the evidence presented at trial. Specifically, he argues that the State failed to prove the felony amount of marijuana and, consequently, was unable to go forward with the indictment. The defendant was initially indicted for the offense of possession of one-half ounce (14.175 grams) of marijuana with the intent to sell or deliver. The evidence at trial showed that the marijuana weighed 1.9 grams. The State acknowledged, at the conclusion of their case, that it did not appear the proven amount of marijuana was sufficient to establish the indicted crime and asked the court to charge on the lesser included offense of possession of marijuana. The trial court agreed, directed a verdict as to the charges of possession with intent to sell or deliver, and stated it would allow the jury to consider the lesser included offense of simple possession of marijuana.

At the close of the defendant's proof, the court held a jury-out hearing on the issue of jury instructions. The defendant argued that the charge of simple possession should not be presented to the jury because the indicted charge had been dismissed. Before a variance will be held fatal, it must be deemed to be material and prejudicial. A variance between an indictment and the proof in a criminal case is not material where the allegations and proof substantially correspond; the variance is not of a character which could have misled the defendant at trial and is not such as to deprive the accused of his right to be protected against another prosecution for the same offense. *State v. Moss*, 662 S.W.2d 590 (Tenn. 1984). The variance is not fatal in the instant case. The defendant was on notice that he was charged with possession of marijuana. Any variance with respect to the amount of marijuana was immaterial. The defendant is not entitled to relief on this issue.

Next, the defendant argues that he was improperly denied a sentence of probation. Because of the defendant's "extensive record," the trial court determined that he was not a proper candidate for probation. At the time of sentencing, the defendant had several prior convictions, including aggravated assault, attempted voluntary manslaughter, two vandalism charges, two counts of drug possession, two counts of reckless endangerment with a deadly weapon, three assault charges, and six counts of driving while his license was suspended or revoked. In determining if incarceration is appropriate, a trial court may consider the need to protect society by restraining a defendant having a long history of criminal conduct. T.C.A. § 40-35-103(1)(A) (2006). We agree that the defendant's record supports the trial court's denial of probation.

The defendant was sentenced to concurrent sentences of eleven months and twenty-nine days for his convictions. He was convicted of two Class A misdemeanors. A trial court is allowed greater flexibility in setting misdemeanor sentences than felony sentences. *State v. Johnson*, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999). No separate sentencing hearing is required, though the court must

give the defendant a reasonable opportunity to be heard regarding the length and manner of service of the sentence. T.C.A. § 40-35-302(a) (2006). There is no presumption of a minimum sentence. *State v. Humphreys*, 70 S.W.3d 752, 768 (Tenn. Crim. App. 2001).

The sentence must be specific and in accordance with the principles, purposes, and goals of the Sentencing Act. T.C.A. § 40-35-302(b) (2006); *State v. Palmer*, 902 S.W.2d 391, 393 (Tenn. 1995). A determinate sentence should be set with a percentage of not greater than seventy-five percent to be served in confinement. T.C.A. § 40-35-302(d). The trial court should consider the enhancement and mitigating factors when calculating the percentage of the sentence to be served in confinement. *Id.; State v. Troutman*, 979 S.W.2d 271, 274 (Tenn. 1998). The trial court is authorized to place the misdemeanant on probation either immediately or after a term of confinement. T.C.A. § 40-35-302(e).

In imposing a misdemeanor sentence, the court shall fix a percentage of the sentence to be served by the defendant. After service of such a percentage of the sentence, the defendant shall be eligible for consideration for work release, furlough, trusty status, and related rehabilitative programs. T.C.A. § 40-35-302. In the instant case, no percentage is set on the judgment, but it is clear from the record that the trial court did not intend for the percentage of service to be zero percent. Therefore, we remand to the trial court so that the court may affix a percentage of the sentence to be served by the defendant. In determining the percentage of the sentence to be served in actual confinement, the court shall consider the purposes of this chapter, the principles of sentencing, and the enhancement and mitigating factors set forth in this chapter, and it shall not impose such percentages arbitrarily.

## Conclusion

Based on the foregoing and the record as a whole, we affirm the judgments from the trial court with regard to all issues not related to sentencing. We remand the issue of sentencing to the trial court for affixing a percentage of the sentence to be served by the defendant.

_____
JOHN EVERETT WILLIAMS, JUDGE

-8-